United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FARMGIRL FLOWERS, INC.,

Plaintiff,

v.

BLOOM THAT, INC., et al.,

Defendants.

Case No. 14-CV-05657-LHK

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Re: Dkt. No. 12

Before the Court is a motion for preliminary injunction filed by Plaintiff Farmgirl, Inc. ("Farmgirl"). ECF No. 12 ("Motion" or "Mot."). Farmgirl requests that the Court issue a preliminary injunction prohibiting Defendant Bloom That, Inc. ("Bloom That") from using burlap sack material, or anything confusingly similar in appearance, in connection with the sale of flowers. Farmgirl also requests that Bloom That be enjoined from "misappropriating the goodwill and reputation of Farmgirl Flowers and competing unfairly with Farmgirl Flowers." *Id.* at 19. Having considered the submissions of the parties, the record in this case, and the relevant law, the Court hereby DENIES Farmgirl's Motion, for the reasons stated below.

## I. BACKGROUND

### A. Factual Background

United States District Court
Northern District of California

Farmgirl is a Delaware corporation and has its principal place of business in San Francisco California. ECF No. 1 ("Compl."), ¶ 7. Farmgirl is engaged in the sale and distribution of flowers, primarily in the area of San Francisco. Mot. 3. According to Farmgirl, its business mission is to support local farming by selling only locally farmed floral arrangements. *Id.* Rather than offering a large selection of different types of flower arrangements, Farmgirl prepares only one type of bouquet per day using locally grown, seasonal flowers. Compl. ¶ 13.

**1. Farmgirl's Coffee Sack Burlap Wrap**

In 2010, Farmgirl began dressing its floral bouquets with a wrapping made out of recycled burlap sacks that were once used to hold coffee beans. Compl. ¶¶ 1-2; Mot. 4. Farmgirl calls this wrapping the "Coffee Sack Burlap Wrap." Compl. ¶¶ 1-2; Mot. 4. Farmgirl obtains at least some of the burlap for the Coffee Sack Burlap Wrap from local coffee roasters, such as Ritual Coffee, for free to help Farmgirl keep its costs low. ECF No. 24 at 4. Farmgirl contends that the Coffee Sack Burlap Wrap creates no utilitarian advantage over traditional kraft paper or cellophane wrapping and is only used as an outer wrapping to identify the bouquet as coming from Farmgirl. Mot. 10. Farmgirl's bouquets are first wrapped in paper, then in burlap. *Id.* Farmgirl uses paper as the first wrapping because Farmgirl contends that burlap "does not function as well as traditional cellophane or kraft paper wrapping." *Id.* Since introducing the Coffee Sack Burlap Wrap, Farmgirl's revenues grew rapidly during the years 2011-14, and revenues for 2015 are expected to reach $2 million. Compl. ¶ 16; ECF No. 13 ¶ 5. According to Farmgirl, its customers, along with persons and businesses in the industry, began to associate Farmgirl with its Coffee Sack Burlap Wrap. Compl. ¶ 16. Farmgirl also received national media coverage featuring its Coffee Sack Burlap Wrap and its trade dress has been featured in articles appearing in newspapers and magazines throughout the United States. *Id.* ¶ 19. Similarly, internet blogs have mentioned Farmgirl's use of burlap wrapping for flower arrangements. *Id.* ¶¶ 20-29. Farmgirl contends that between the years of 2011-14, it expended substantial effort, time, and resources on promoting and advertising its "unique Coffee Sack Burlap Wrap brand-identifying symbol." *Id.* ¶ 29.

**2. Defendant Bloom That**

United States District Court
Northern District of California

Bloom That is an online flower delivery service that delivers bouquets of flowers in 90 minutes or less. ECF No. 24 at 2. Bloom That was founded in September 2012, and shipped its first bouquet in January 2013. ECF No. 24-1 ¶ 2. Bloom That initially started out much like Farmgirl. Bloom That launched in San Francisco and set up shop within one mile of Farmgirl's headquarters and in Farmgirl's primary sales territory. Mot. 8; ECF No. 24 at 2-3. Bloom That, like Farmgirl, sold bouquets that had been wrapped in recycled burlap donated by local coffee roasters. ECF No. 24-1 ¶ 8. After August 2013, however, Bloom That began wrapping its bouquets in new, rather than recycled, burlap. ECF No. 24-1 ¶ 8. Bloom That also, like Farmgirl, claims to source locally-grown flowers for use in its bouquets and delivers its bouquets via bicycle courier. Compl. ¶ 14; ECF No. 24-1 ¶ 7; ECF No. 25 ¶ 7.

Bloom That packages its bouquets by first wrapping the flowers with a material designed to provide water hydration to the flowers during delivery. ECF No. 24 at 2. Bloom That then wraps the bouquet in an outer layer of burlap, and applies its own branding of an orange and white striped ribbon and a paper "luggage" tag fastened with a wooden clothes pin. *Id.* at 2-3; ECF No. 24-1 ¶ 12 (declaring that "since February of 2013," "[e]very Bloom That bouquet is shipped tied with an orange and white striped bow, and a luggage style tag affixed to the burlap wrap with a wooden clothes pin.").[1] According to Bloom That, the floral arrangement is wrapped in burlap because the "hydration pack" is neither aesthetically pleasing nor is it sufficient to hold the flowers together. ECF No. 24 at 2-3. Bloom That contends that it chose burlap for a number of reasons: (1) burlap holds up to repeated wet and dry cycles without losing its shape, durability, or function; (2) burlap is less expensive (at $.50 - $.65 per unit) than similarly durable fabrics such as canvas (at $5 per unit); (3) burlap is more environmentally friendly than petroleum-based products

[1] Farmgirl disputes whether Bloom That always uses an orange and white ribbon based on a picture of a Bloom That bouquet found through a "Google search." *See, e.g.*, ECF No. 30 at 10; ECF No. 30-1 ¶ 3; ECF No. 30-2. Farmgirl's Google search does not indicate whether this bouquet was actually sold or shipped by Bloom That. Nor does the Google search result reveal when that picture was taken. Because this Court does not reach the likelihood of confusion element of Farmgirl's trade dress infringement claim, this dispute is not relevant to the Court's decision today.

and burlap can also be reused; and (4) it provides the "curated look" that Bloom That's customers find popular. *Id.* at 3-4. According to Bloom That, the functional properties of burlap made it an ideal wrapping for bouquets delivered using a bicycle courier. *See* ECF No. 24 at 3-4; ECF No. 24-1 ¶¶ 4-6. Burlap is able to absorb moisture, whether from (a) rain, (b) humidity from refrigeration, or (c) the hydration pack. ECF No. 24-1 ¶ 6. By absorbing this moisture, burlap keeps the excess moisture from damaging the flowers, or their appearance, during delivery. *Id.* ¶ 6-7. Moreover, burlap is water-resilient in that it will maintain its shape, durability, and form even after repeated wetting and drying cycles, unlike paper. *Id.* ¶ 6.

**3. The Parties' First Contact and Farmgirl's Attempt To Seek Federal Trade Dress Protection**

Farmgirl first contacted Bloom That by letter dated June 3, 2013. ECF No. 24-4. In the letter, Farmgirl alleged that Bloom That's use of burlap created a likelihood of confusion with Farmgirl's trade dress. *Id.* Bloom That responded on June 7, 2013, denying any wrongdoing and stating that a burlap wrap for flowers was not protectable as trade dress. ECF No. 24-5 at 3. Farmgirl sent a further letter on July 31, 2013, contending that Bloom That's "improper use of recycled burlap as part of its flower delivery" was improper trade dress infringement. *See* ECF No. 24-6.

Somewhere around this time, Bloom That ceased using recycled, used burlap donated from local coffee roasters and instead began wrapping its bouquets in new burlap. ECF No. 24-1 ¶ 8. According to Bloom That's CEO, it now uses new burlap, rather than recycled burlap from a coffee roaster, because the recycled burlap was inconsistent in appearance and texture and sometimes smelled of coffee or mildew. *Id.* ¶¶ 8, 13.

In September 2013, Farmgirl sought to protect its trade dress by filing Trade Dress Application No. 86/060,972 with the United States Patent and Trademark Office ("Trademark Office"). Compl. ¶¶ 3, 30. Farmgirl's application describes the trade dress as "three-dimensional product packaging composed of a burlap material for packaging the goods. The drawing is lined to indicate burlap, which is a feature of the mark. The broken lines indicate position and

United States District Court
Northern District of California

placement of the mark and are not part of the mark." *Id.* ¶ 30; ECF No. 2 at 2. The picture submitted with the application is depicted below:



ECF No. 2 at 2. On October 21, 2014, the Trademark Office approved Farmgirl's registration for publication in the Trademark Office's Official Gazette. Compl. ¶ 3.

Three days later, on October 24, 2014, Farmgirl's CEO, Ms. Stembel, ordered a bouquet from Bloom That with a request for a personalized card that read "legal." ECF No. 24-1 ¶ 23.

On November 25, 2014, Farmgirl's application for registration of its alleged trade dress was published in the Trademark Office's Official Gazette. Compl. ¶ 3. On December 23, 2014, Bloom That filed with the Trademark Office a request for an extension of time to oppose Farmgirl's proposed registration. ECF No. 24-20.

**B. Procedural History**

On December 30, 2014, Farmgirl filed the instant lawsuit in this Court. *See* Compl.[2] Farmgirl asserted four causes of action. First, Farmgirl alleged that Farmgirl's Coffee Sack

---

[2] On February 18, 2015, Bloom That filed a motion to dismiss Farmgirl's complaint. ECF No. 23. Rather than opposing, Farmgirl filed a first amended complaint on March 10, 2015. ECF No. 25. Farmgirl's amended complaint asserted three additional counts for false advertising in violation of the Lanham Act, and California Business & Professions Code §§ 17200 and 17500. *Id.* On April 17, 2015, Bloom That filed a motion to dismiss the first amended complaint. ECF No. 35.

Burlap Wrap is entitled to trade dress protection under the Lanham Act and that Bloom That's use of burlap to wrap flowers for sale and delivery infringes upon Farmgirl's trade dress in violation of 15 U.S.C. § 1125. *Id.* ¶¶ 42-52. Second, Farmgirl alleged that Bloom That is liable for common law trade dress infringement. *Id.* ¶¶ 53-59. Third, Farmgirl alleged that Bloom That's trade dress infringement constitutes unlawful and unfair business practices in violation of California's Unfair Competition Law. *Id.* ¶¶ 60-64. Fourth, Farmgirl alleged that Bloom That's trade dress infringement violates California's Model State Trademark Law. *Id.* ¶¶ 65-69.

On January 9, 2015, Farmgirl filed the instant Motion. Farmgirl argues that it is entitled to a preliminary injunction based on its claim that Bloom That's use of a burlap wrap for its flower bouquets constitutes an infringement of Farmgirl's alleged trade dress in violation of the Lanham Act. Mot. Farmgirl also filed a supporting declaration of its CEO, Ms. Stembel which referenced Exhibits A-L. ECF Nos. 13 and 42. On February 27, 2015, Bloom That filed an opposition along with a supporting declaration from Bloom That's CEO, Mr. Bladow, a supporting declaration from its attorney, and accompanying exhibits. ECF No. 24 ("Opp'n"). On March 25, 2015, Farmgirl also filed a reply and a further declaration from its CEO, Ms. Stembel. ECF No. 30 ("Reply").

On March 25, 2015, Bloom That filed with the Trademark Office a Notice of Opposition to Farmgirl's application for trade dress protection, and the Trademark Office has instituted an opposition proceeding. *See* ECF No. 33 at 5.

## II. LEGAL STANDARDS

Preliminary relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. The plaintiff bears the burden of proof on each element. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "[T]he decision whether to grant or deny

injunctive relief rests within the equitable discretion of the district courts," and "such discretion must be exercised consistent with traditional principles of equity." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006).

A preliminary injunction is an extraordinary remedy never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

The Court first addresses whether Farmgirl has demonstrated a likelihood of success on the merits of Farmgirl's trade dress infringement claim. To succeed on its trade dress infringement claim under Section 43 of the Lanham Act, Farmgirl must prove 1) that Farmgirl owns protectable trade dress, and 2) that Bloom That's trade dress creates a likelihood of confusion. *See Wal-Mart Stores, Inc. v. Samara Bros, Inc.*, 529 U.S. 205, 210 (2000). Because the Court concludes that Farmgirl has not carried its burden to establish Farmgirl likely owns protectable trade dress, the Court concludes that Farmgirl has not made a showing that it is likely to succeed on its claim for trade dress infringement, as explained below.

#### 1. Whether Farmgirl Owns Trade Dress Protectable Under the Lanham Act

Farmgirl argues that its Coffee Sack Burlap Wrap is protectable trade dress because it is non-functional and distinctive. Mot. 10-14. Bloom That responds that Farmgirl's alleged trade dress is not protectable because it is functional and not distinct. Opp'n 7-15.

Under 15 U.S.C. § 1115(a), registration of a trade dress is *prima facie* evidence of validity and entitles the owner to a presumption of protectable rights. Because Farmgirl's trade dress is not registered, it must show: 1) that its trade dress is non-functional and 2) that it is either

United States District Court
Northern District of California

inherently distinctive or has acquired secondary meaning. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773 (1992). The Court will first address whether Farmgirl's alleged trade dress is non-functional.

**a. Functionality**

**i. Utilitarian Functionality**

Farmgirl argues that its burlap wrap is non-functional because (1) the burlap wrap provides no utilitarian advantages because it "does not serve to protect the flowers, aid in providing water to the flowers, shield the flowers from sun, heat, rain, or cold, or serve any functional purpose other than as a brand identifier for Farmgirl Flowers." Mot. 10 (citing ECF No. 13 ¶ 22). Farmgirl further argues that (2) there are many alternative designs, (3) Farmgirl does not tout any utilitarian advantages of its burlap wrap in advertising, and (4) the cost of burlap is equivalent to traditional flower wraps made of kraft or cellophane. Mot. 11-12. Bloom That responds that burlap is a durable, water-resilient fabric useful for delivering flowers which are often exposed to water during the delivery process. Opp'n. 8. Bloom That also identifies a utility patent, U.S. Patent No. 5,706,629, which claims wrapping flower bouquets with burlap, as evidence of burlap's functional properties. Opp'n 8. As to the cost of manufacture, Bloom That responds that while burlap may be comparable in costs to paper or cellophane wraps, a material of similar strength and durability, canvas, would cost up to ten times more per unit. *Id.* at 9.

A trade dress is functional if it "is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995) (internal quotation omitted). "The functionality doctrine . . . forbids the use of a product's feature as a trademark where doing so will put a competitor at a significant disadvantage because the feature is 'essential to the use or purpose of the article' or 'affects [its] cost or quality.'" *Id.* at 169 (quoting *Inwood Labs., Inc.v. Ives Labs, Inc.*, 456 U.S. 844, 850 n.10 (1982)). "To determine whether a product feature is functional, this circuit typically considers four factors: (1) whether advertising touts the utilitarian advantages of the design, (2)

whether the particular design results from a comparatively simple or inexpensive method of manufacture, (3) whether the design yields a utilitarian advantage and (4) whether alternative designs are available." *Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (citing *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998)). With these considerations in mind, and on the record provided, the Court agrees with Bloom That that Farmgirl's trade dress appears functional. Because the Court finds *Talking Rain* factors three (utilitarian advantages) and two (cost) most probative at this time, the Court will begin its analysis with those factors before turning to factors one (plaintiff's advertising) and two (design alternatives).

Farmgirl has failed to carry its burden to prove that a burlap bouquet wrap likely provides no utilitarian advantages. Farmgirl's application for trade dress is broad and consists simply of a burlap wrap for live flower arrangements. *See* ECF No. 25-1 at 6,8 ("The mark consists of three-dimensional product packaging composed of a burlap material for packaging the goods."). While the use of a specific material in a product's packaging may constitute protectable trade dress, *see Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 679 F.3d 410 (6th Cir. 2012) (holding red, melted wax covering the cap of a whiskey bottle was nonfunctional), Bloom That provides numerous examples of the utilitarian use of burlap in connection with the transport of agricultural products and Farmgirl's alleged trade dress is not restricted by color, size, or shape. For example, burlap has been in use for more than 150 years, and is known for its strength, water-resilience, and versatility. ECF No. 24-8 at 1, 4-5. These properties, combined with the low cost of burlap, have resulted in burlap's use as packaging for many commodities, such as coffee, and for the transportation of live plants. *See id.* at 4-5. These examples suggest that burlap has utilitarian features making it desirable for use as a wrapping for live flowers such as floral arrangements.

Similarly, Bloom That contends it uses burlap to wrap its floral arrangements because of the performance-related advantages of burlap over paper or cellophane. Specifically, Bloom That uses burlap wrappings to hold floral arrangements together while protecting the arrangement from

United States District Court
Northern District of California

the elements during delivery conditions. ECF No. 24-1 ¶¶ 4-6. According to Bloom That, burlap is a superior wrap for flower delivery by bicycle courier. *Id.* ¶¶ 4-9. During delivery, the bouquets may be exposed to water from exterior sources such as rain. *Id.* Bloom That would incur substantially more costs if it were to use an alternative fabric with similar water-resilient properties, such as canvas or hemp. *Id.* ¶¶ 4-9. The Court finds that Farmgirl has made an insufficient showing that burlap does not yield utilitarian benefits when used to wrap bouquets for delivery. *See Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 785 (9th Cir. 2002) ("De jure functionality . . . means that the product is in its particular shape because it works better in this shape . . . . [B]efore an overall product configuration can be recognized as a trademark, the entire design must be arbitrary or non de jure functional." (quoting *Textron, Inc. v. Int'l Trade Comm'n*, 753 F.2d 1019, 1025 (Fed. Cir. 1985)).

Moreover, Bloom That contends that the environmental benefits of burlap over plastic further supports a finding that a burlap wrap provides utilitarian features. Opp'n 9. Farmgirl responds, without support, that a product design's eco-friendliness should not be considered in the functionality analysis and further contends that other eco-friendly options are available. Reply at 6 n.1. The Court holds that a product design's eco-friendliness may support a finding of functionality, especially where, as here, there is evidence that the eco-friendliness of a product's packaging is important to consumers. *See* Mot. 7; ECF No. 24-1 ¶10; *see also Vuitton Et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 774-75 (9th Cir. 1981) ("Functional features of a product are features which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." (internal citation omitted)). Farmgirl, also, does not dispute that both parties are targeting eco-friendly consumers. *See, e.g.*, Mot. 7. The fact that other wrapping materials are also eco-friendly does not speak to whether burlap, also, provides those functional benefits to the consumer.

As further evidence of the utilitarian features of burlap, U.S. Patent No. 5,706,629 ("the '629 Patent") has claims directed to methods for wrapping a floral arrangement with burlap. *See, e.g.*, U.S. Patent No. 5,706,629 at col. 8, ll. 9-14 ("The method of claim 1 wherein . . . the sleeve is

constructed from a material selected from the group consisting of . . . burlap . . . ."). "A utility patent is strong evidence that the features therein claimed are functional." *TrafFix*, 532 U.S. at 29. "If trade dress protection is sought for those features the strong evidence of functionality based on the previous patent adds great weight to the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection." *Id.* at 29-30. "Where the . . . patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id.* at 30. Farmgirl has not carried this "heavy burden" to establish that burlap does not provide a utilitarian function when used as a wrap for flowers.

Farmgirl argues that the '629 Patent should be disregarded because the patent is directed to a general method of wrapping flowers and lists materials other than burlap as also being suitable for wrapping bouquets. Reply 5. While the '629 Patent is directed to general methods of wrapping flowers, dependent claims 8 and 17 specifically limit the claimed invention to using a burlap wrapping material. '629 Patent at 8:8-13, 9:8-13. There is a heavy presumption that elements claimed in a utility patent are functional, and the utility patent further serves as evidence that burlap has been recognized as a functionally-suitable wrap for flower bouquets. *TrafFix*, 532 U.S. at 29 ("In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying."). Further, whether other materials are also recognized as "suitable" is relevant to whether alternative designs are available and does not rebut Bloom That's showing that burlap provides utilitarian advantages. *See id.* at 33 (holding that once functionality is established, there is "no need" to speculate about alternative designs). Although Farmgirl contends that the burlap used in its floral arrangements imparts no utilitarian benefits, Bloom That has made a sufficient showing that the use of burlap to wrap floral arrangements provides utilitarian benefits. The Court will now address the second *Talking Rain* factor, "whether the particular design results from a comparatively simple or inexpensive method of manufacture." 349 F.3d at 603.

United States District Court
Northern District of California

Farmgirl has failed to carry its burden to prove that a burlap bouquet wrap likely does not result from a comparatively simple or inexpensive method of manufacture. Farmgirl's use of burlap has had an impact on the cost of its bouquets. Farmgirl has been able to obtain the burlap for its Coffee Sack Burlap Wrap for free from local coffee roasters. *See* Opp'n 9; Reply 6. As a result, Farmgirl is able to maintain a low price point. *See* Opp'n 9. Bloom That agrees that burlap is less expensive than fabrics of similar durability, and Bloom That contends that Bloom That uses burlap rather than other fabrics based upon cost. *See* ECF No. 24-1 ¶¶ 8-9 (choosing new burlap at $.50 - $.65 per bouquet because "obtaining a new fabric that was as durable as burlap and strong enough to hold its shape during delivery would cost Bloom That approximately $5.00 per bouquet"). A product feature is functional, and not entitled to protection as trade dress, if the feature affects the cost of the article. *TrafFix*, 532 U.S. at 32 (holding that a feature's effect on cost is "strong evidence" of that feature's functionality).

The Court will now address the first and fourth *Talking Rain* factors: "(1) whether advertising touts the utilitarian advantages of the design" and "(4) whether alternative designs are available." 349 F.3d at 603. The Court finds these factors to be neutral. Farmgirl's arguments regarding these factors are not persuasive and are insufficient at this juncture to meet Farmgirl's burden to prove a likelihood of success. Specifically, Farmgirl argues that its advertising does not tout the utilitarian advantages of using burlap and that there are many alternative designs available. Mot. 10-11. As to the first point, the fact that Farmgirl's advertising does not tout the utilitarian advantages of using burlap has a neutral impact on the Court's analysis. As to the final point, because Farmgirl has failed to meet its burden to prove that the trade dress likely provides no utilitarian advantages, "[t]here is no need . . . to engage . . . in speculation about other design possibilities." *TrafFix*, 532 U.S. at 33.

For the reasons stated above, primarily burlap's utilitarian features and the comparatively low cost of burlap compared to similar fabric wraps, Farmgirl has failed to meet its burden to prove a likelihood of success in establishing that a burlap wrap for flower bouquets is non-functional. *Qualitex*, 514 U.S. at 165 ("in general terms, a product feature is functional, and

cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage" (internal quotations omitted)). *TrafFix*, 532 U.S. at 29 ("trade dress protection may not be claimed for product features that are functional").

**ii. Aesthetic Functionality**

Bloom That also argues that Farmgirl's alleged trade dress is aesthetically functional, serving as an independent bar to trade dress protection. Opp'n 9-11. Farmgirl responds that burlap serves a source-identifying function for Farmgirl and therefore the aesthetic functionality doctrine is inapplicable. Reply 6-7. The Court finds that Farmgirl has failed to carry its burden to establish, at this juncture, that its trade dress is not aesthetically functional.

Aside from utilitarian functionality, a product's trade dress is also functional if consumers buy the product largely for its aesthetic value and where the aesthetic features of the trade dress contribute to that value and thus aid the performance of an object for which the product is intended. *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067-72 (9th Cir. 2006). This doctrine is called aesthetic functionality.

Bloom That's CEO, Mr. Bladow, indicated that aside from the utilitarian benefits provided by wrapping floral bouquets in burlap, he also chose burlap for its aesthetic properties. *See* ECF No. 24-1 ¶ 11. According to Mr. Bladow, "[b]urlap is popular among Bloom That's customers," "[t]he appearance of a bouquet is one of the most important factors in its sale," and burlap "provides a curated look." *Id.* Moreover, Bloom That does not rely on burlap as a source-identifying function and instead relies on other elements of his trade dress to perform that function. Instead, bouquets sold by Bloom That are tied with an orange and white striped ribbon, and a luggage-style tag affixed to the burlap wrap with a wooden clothes pin. *Id.* ¶ 12.[3] Bloom

[3] Although Farmgirl disputes whether the orange and white ribbon is "always" applied, *see, e.g.*, ECF No. 30 at 10, Bloom That's CEO declared that "since February of 2013," "[e]very Bloom That bouquet is shipped tied with an orange and white striped bow, and a luggage style tag affixed to the burlap wrap with a wooden clothes pin," ECF No. 24-1 ¶ 12. Moreover, it is undisputed that Bloom That consistently affixes a luggage tag bearing its name on every bouquet. ECF No. 24-1 ¶ 12. Thus, it is not disputed that Bloom That uses an affixed luggage tag as a source



United States District Court
Northern District of California

That also provides evidence that burlap began appearing as a trendy material in 2009 and is commonly used to infuse a "rustic" look in otherwise ordinary décor. Opp. 10. Also, Bloom That provides examples of brides using burlap to wrap wedding bouquets. *Id.*

Moreover, while Farmgirl argues that using burlap to wrap flowers serves a source-identifying function for Farmgirl, *see* Reply 7, the Court finds that Farmgirl failed to carry its burden to establish that is the case. For example, the scope of trade dress protection sought by Farmgirl would foreclose any other florist from using burlap as a wrapping for a bouquet, even if the bouquet or burlap clearly identified the source of the bouquet by the use of the florist's brand name or logo. In other words, Farmgirl's alleged trade dress is not limited to burlap of a certain color, shape, or size, nor is it limited to burlap bearing a particular pattern or logo. In fact, Farmgirl's recycled burlap still bears the mark of the coffee roaster who previously used the burlap for holding coffee beans. Farmgirl has failed to carry its burden to establish that the consumer would associate any use of burlap as a wrapping material for a bouquet of flowers with a single florist, rather than improving the appeal of the bouquet. *Au-Tomotive*, 457 F.3d at 1073-74 (observing that trademark law should not allow "the use of a trademark to monopolize a design feature which, *in itself and apart from its identification of source*, improves the usefulness or appeal of the object it adorns" (citing *Pagliero v. Wallace China Co.*, 198 F.2d 339, 343 (9th Cir. 1952))). Here, Farmgirl simply has not rebutted the showing by Bloom That that one of the essential selling features of a flower bouquet, if indeed not the primary feature, is its aesthetic appearance and that a burlap wrap for floral arrangements is aesthetically pleasing. *Pagliero*, 198 F.2d at 343-44 (holding that a specific design of hotel china was aesthetically functional because the essential selling feature of hotel china is the aesthetics of the design).

In sum, Farmgirl has failed to carry its burden to establish that its exclusive use of burlap would not put competitors, who sought to use burlap for its aesthetic properties, at a significant non-reputation-related disadvantage. *Qualitex*, 514 U.S. at 165.

---

identifier.

United States District Court
Northern District of California

**iii. Summary**

The Court concludes that Farmgirl has failed to carry its burden to establish that Farmgirl's alleged trade dress, a burlap wrap for live flowers, is likely non-functional when measured by its utilitarian properties or its aesthetic properties.

**b. Distinctiveness**

Because the Court concludes that Farmgirl has failed to establish that its alleged trade dress is non-functional, the Court need not address whether Farmgirl has established that the alleged trade dress is distinctive because functional trade dress is not entitled to protection under the Lanham Act. *Disc Golf*, 158 F.3d at 1005-06.

**2. Likelihood of Confusion**

Similarly, because Farmgirl's failure to prove its trade dress is protectable is sufficient to deny it preliminary injunctive relief, and the Court need not address whether Farmgirl has established a likelihood of consumer confusion. *See, e.g.*, *Applied Info. Sci. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (the "threshold issue" is whether the mark is entitled to protection) (citing *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir. 1985)).

**B. Likelihood of Suffering Irreparable Harm**

Where a trademark plaintiff demonstrates that it is likely to succeed on the merits, a district court has discretion to presume irreparable harm. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009). Here, however, Farmgirl has not demonstrated that it is likely to succeed on the merits, and therefore Farmgirl is not entitled to a presumption of irreparable harm.

In this case, the Court concludes that Farmgirl has failed to satisfy its burden of establishing a likelihood that it will suffer irreparable harm absent an injunction. According to Farmgirl, Bloom That's alleged trade dress infringement began shortly after Bloom That opened up shop in January 2013. Compl. ¶¶ 34-36; Mot. 7-8; ECF No. 24-1 ¶¶ 2, 8. Yet, notwithstanding Bloom That's alleged trade dress infringement, Farmgirl's revenues "grew rapidly" during the

United States District Court
Northern District of California

years 2011-2014. ECF No. 13 ¶ 5. Further, Farmgirl "is expected to achieve almost $2,000,000 in revenues this year." *Id.* Such evidence of success, notwithstanding Bloom That's alleged infringement over the past two years, does not evidence that Farmgirl will be irreparably harmed absent a preliminary injunction. Accordingly, the Court concludes that Farmgirl has not demonstrated a likelihood of irreparable harm such that a preliminary injunction is warranted. *Winter*, 555 U.S. at 20.

### C. Balance of the Equities and the Public Interest

Given Farmgirl's failure to shoulder its burden to demonstrate a likelihood of success on the merits or irreparable harm absent a preliminary injunction, the Court at this juncture need not reach the balance of the equities or the impact of any such injunction on the public interest.

## IV. CONCLUSION

For the foregoing reasons stated above, Farmgirl's Motion is DENIED.

**IT IS SO ORDERED.**

Dated: April 28, 2015

Lucy H. Koh
LUCY H. KOH
United States District Judge